UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERRANCE DIXON,

            Plaintiff,

    v.

ANDREW M. SAUL[1],

           Defendant.

Case No. 18-cv-03483-HSG

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 20, 23

Defendant Andrew M. Saul is the Commissioner of the Social Security Administration ("SSA"). The former Acting Commissioner, Nancy A. Berryhill, acting in her official capacity, denied Plaintiff Terrance Dixon's application for Supplemental Security Income ("SSI"). Dkt. No. 1. Plaintiff seeks judicial review of that decision. *Id.* The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 16-5. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for summary judgment and **DENIES** Defendant's motion for summary judgment.

## I. BACKGROUND

### A. Factual Background

Plaintiff was born in 1972 and has been homeless since 2003 or earlier. Administrative Record ("AR") 1515, 1747. He has never held a long-term job. AR 344–45.

#### 1. Plaintiff's Medical Condition

Plaintiff alleges that he suffers physical and mental injuries after being shot in the head in

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of Social Security. Pursuant to Federal Rules of Civil Procedure Rule 25(d), the Court substitutes him as Defendant.

1994 and shot in the buttocks in 2008. AR 155, 1516, 1677. Plaintiff alleges he suffers chronic pain and fecal incontinence and uses heroin "as a coping strategy to take away the pain." AR 153, 156, 1524, 1528, 1532, 1535. Plaintiff also alleges that he suffers from asthma and has had at least one panic attack related to his difficulty breathing. AR 150. In 2015, he was hospitalized overnight for hypoxemic respiratory failure. AR 1396. Plaintiff further alleges that he suffers from post-traumatic stress disorder ("PTSD"), insomnia, nightmares, psychotic disorder, paranoia, depression, and chronic obstructive pulmonary disease. AR 360.

### 2. Plaintiff's Physicians

#### a. Mchecko Graves-Matthews, M.D.

In 2015, while Plaintiff was incarcerated, Dr. Graves-Matthews diagnosed him with a mood disorder, PTSD, anxiety, major depressive disorder, and polysubstance dependence. AR 18. In August 2015, Dr. Graves-Matthews assigned Plaintiff a GAF[2] score of 50 and described his affect as "extremely blunted to depressed." AR 18, 1464. In September 2015, after a month of medication, Dr. Graves-Matthews noted that Plaintiff's affect was "somewhat brighter" and that he smiled "several times" during session, but she maintained a GAF score of 50 for Plaintiff. AR 1464–66.

#### b. Alexa Fenton, ASW

On April 1, 2015, Ms. Fenton assigned Plaintiff a GAF of 47. AR 17. Ms. Fenton noted that Plaintiff presented in "a disorganized manner," "was easily confused," and used "depressive language to express himself." AR 1747. While Ms. Fenton noted that Plaintiff was "calm and engaged" at the beginning of the appointment, as the appointment progressed, Plaintiff "became agitated as evidenced by yelling and rapid breathing." AR 1744. Further, although Ms. Fenton found that Plaintiff was hostile and had a depressed mood, she also found he was alert and oriented, his psychomotor activity was normal, and his intellectual functioning, insight, and

---

[2] GAF scores are a tool used by mental health professionals to quantify in a single measure a patient's overall level of functioning at a given moment. *See* Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, at 30-32 (4th ed. Text Revision (2000)). A GAF of 50 indicates either "serious symptoms . . . OR any serious impairment in social, occupational, or school functioning." *Id.* at 33.

2

judgement were fair.  AR 1751–52.  The two connected again via telephone on May 12, 2015, and

Ms. Fenton noted that Plaintiff "appeared to be in a positive space as evidenced by positive self-

talk" and "was calm throughout the conversation."  AR 1753.  Plaintiff did not show up to

subsequent appointments with Ms. Fenton.  AR 17–18.

### c.  Lesliegh Franklin, Ph.D.

At the request of counsel, Dr. Franklin examined Plaintiff on June 29, 2016.  AR 18.  Dr.

Franklin offered several diagnoses: intellectual disability, PTSD, dysthymic disorder, substance

use disorder, and borderline intellectual functioning.  AR 1520.  Dr. Franklin noted that the

diagnoses are limited "by the records available, the time of evaluation, and the client's self-

report."  *Id.*  Dr. Franklin noted that Plaintiff had "difficulty remembering and following

instructions, low frustration tolerance, and trouble consistently complying with strict workplace

expectations."  *Id.*  She found that Plaintiff's Full Scale IQ score is "62, which is Extremely Low

and places him in the 1st percentile."  *Id.*  She further noted that Plaintiff's intellectual and

neuropsychological impairments "might be roadblocks to his ability to maintain employment."  *Id.*

### d.  Bob Kennedy, Psy.D.

On January 21, 2015, Dr. Kennedy examined Plaintiff.  AR 18.  Dr. Kennedy concluded

that Plaintiff's PTSD and major depressive disorder with psychotic features would moderately to

markedly limit work-related activities.  *Id.*; AR 1546.  Dr. Kennedy marked that Plaintiff did not

have work restrictions related to his mental health conditions, although he also marked that

Plaintiff's mental health condition prevents him from working.  AR 1546.  Finally, Dr. Kennedy

noted that there was no evidence of substance abuse.  *Id.*  The administrative record does not

include Dr. Kennedy's examination or treatment notes.  AR 18.

### e.  Geoffrey Watson, M.D.

In 2011, Dr. Watson examined Plaintiff and concluded that Plaintiff's medical condition

prevented him from working.  AR 1543.  Dr. Watson marked that Plaintiff could stand for less

than 2 hours and sit for less than 6 hours in an 8-hour workday, noted that Plaintiff had medical

conditions of "Post Traumatic Stress Disorder and Psychiatric [sic]," and said that Plaintiff should

be referred for an evaluation of behavioral health conditions that may prevent him from working

for "Psychosis . . . [and] mood swings." AR 1543–44.

### 3. State-Agency Consultative Examining Physicians and Consultants

#### a. Lorraine Schnurr, Ph.D.

Dr. Schnurr evaluated Plaintiff on July 4, 2017. AR 1673–81. Plaintiff scored 24/30 points on a measure of cognitive functioning where a score of <21 suggests mild neurocognitive impairment. AR 1678. Specifically, Dr. Schnurr noted that Plaintiff's "immediate attention seemed impaired . . . [and his] long term, short term and immediate memory also appeared impaired." *Id.* Plaintiff scored below average on a measure of memory, process speed, and verbal comprehension; his total score "place[d] him in the **extremely low range** of intellectual functioning." AR 1679 (emphasis in original). Relating the findings to Plaintiff's work functioning, Dr. Schnurr posited that Plaintiff "may have difficulty maintaining . . . regular attendance and being persistent because of [his] focus and concentration problems" and "would have difficulty completing a workday related to interruptions from his low intellectual range, memory loss, homelessness, poor attention span and focus stabilizing current health issues." AR 1681.

#### b. Eugene McMillan, M.D.

On December 5, 2015, Dr. McMillan examined Plaintiff at the request of the State agency. AR 21, 1498. Dr. McMillan first noted that Plaintiff's medical history was reported exclusively from Plaintiff—no additional documentation was provided. Outside of conjunctival redness and irritation in his eyes, Dr. McMillan found Plaintiff had no wheezing, had a normal gait, normal range of motion, and normal grip strength. AR 21, 1500. Dr. McMillian concluded that Plaintiff could perform the full range of heavy exertional work, with frequent stooping, kneeling, crouching, and crawling, although he would have to avoid "prolonged exposure to dust, grass, and weeds." AR 1501.

#### c. J. Foster-Valdez, Ph.D.

Because Plaintiff had failed to attend psychological consultative examinations, Dr. Foster-Valdez concluded that Plaintiff's affective disorders were non-severe, given that the medical records were insufficient to conclude that the claimant had a severe mental impairment. AR 199.

4

d.  C. Scott, M.D.

Dr. Scott, a medical consultant, concluded that only Plaintiff's asthma was a severe impairment, while noting that the evidence file was insufficient to evaluate alleged impairments. AR 21, 200–202.

**B.     Legal Framework of the Social Security Act**

To qualify for SSI, the claimant must be "disabled" as defined by the Social Security Act ("Act").  The benefit program defines disability as an individual's inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505, 416.905.  The SSA deems a person disabled only if:

> [H]is physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**1.     Five-Step Process for Evaluating Claimant's Disability Claim**

When the claimant is dissatisfied with the initial and reconsidered decisions by the SSA, the claimant may request a hearing in front of an administrative law judge ("ALJ").  20 C.F.R. §§ 404.929, 416.1429.  The ALJ will issue a new decision based on the preponderance of the evidence developed in the hearing record and in the file.  *Id.* §§ 404.929, 416.1429.  To determine whether the claimant qualifies for disability benefits, the ALJ utilizes a five-step sequential evaluation process.  *See id.* §§ 404.1520(a)(4), 416.920(a)(4).

e.  Step One: Substantial Gainful Work Activity.

At Step One, the ALJ determines whether the claimant is currently engaged in work

activity that is substantial and gainful. *Id*. § 404.1520(a)(4)(i), (b); *id*. § 416.920(a)(4)(i), (b). Substantial work activity "involves doing significant physical or mental activities . . . even if it is done on a part-time basis" or requires "do[ing] less, get[ting] paid less, or hav[ing] less responsibility than when [the claimant] worked before." *Id*. §§ 404.1572(a), 416.972(a). "Gainful work activity is work activity that [the claimant] do[es] for pay or profit . . . whether or not a profit is realized." *Id.* §§ 404.1572(b), 416.972(b). If the claimant is engaged in substantial gainful activity, then the claimant is not disabled, regardless of any medical condition or the claimant's age, education, or work experience. *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b).

### f.  Step Two: Medical Severity of Impairment

If the claimant is not presently engaged in substantial gainful activity, then the ALJ determines whether the claimant's alleged impairments are medically severe. *Id*. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). If the claimant lacks "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities," then the impairments are not severe. *Id.* §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a). "Basic work activities" are "the abilities and aptitudes necessary to do most jobs," including physical functioning, sensory capacity, following instructions, use of judgment, and responding appropriately to routine work situations (including supervision and interactions with coworkers), and dealing with changes to work routines. *Id.* §§ 404.1521(b), 416.921(b). Additionally, "[u]nless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the claimant does not meet these requirements, then he is not disabled. *Id.* § 404.1520(a)(4)(ii), (c); *id.* § 416.920(a)(4)(ii), (c).

### g.  Step Three: Listed Impairment

If the claimant has a severe impairment, the ALJ proceeds to Step Three and determines whether the claimant's impairment, or combination of impairments, medically "meets or equals" an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1 ("App. 1"). *Id.* §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d); *see also id.* §§ 404.1525, 416.925 (describing Appendix 1's purpose, organization, and use). A claimant's impairment is medically equivalent to a listed impairment if

it is "at least equal in severity and duration to the criteria of any listed impairment." *Id.*
§§ 404.1526(a), 416.926(a). If the claimant's impairment meets or exceeds the requirements of a
listed impairment, the claimant is disabled, regardless of age, education, and work experience. *Id.*
§§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

The listings for respiratory disorders in Appendix 1 are arranged into seven diagnostic
categories, including asthma (103.03). App. 1 § 103.00(A). Listing 103.03 requires "three
hospitalizations within a 12-month period and at least 30 days apart (the 12-month period must
occur within the period we are considering in connection with [the] application or continuing
disability review). Each hospitalization must last at least 48 hours, including hours in a hospital
emergency department immediately before the hospitalization." App. 1 § 103.00. One year from
the discharge date of the last hospitalization is considered under a disability; after that, residual
impairment(s) is evaluated under 103.03 or another appropriate listing. *Id.*

The listings for mental disorders in Appendix 1 are arranged into eleven diagnostic
categories, including schizophrenia spectrum and other psychotic disorders (12.03), depressive,
bipolar, and related disorders (12.04), intellectual disorder (12.05), and trauma and stressor-related
disorders (12.15). App. 1 § 12.00(A). The listings typically have three sets of criteria: paragraphs
A, B, and C. *Id.* The criteria in Paragraph A (except 12.05) "includes the medical criteria that
must be present in [the] medical evidence," paragraph B "(except 12.05) provides the functional
criteria [assessed], in conjunction with a rating scale" to evaluate how the claimant's mental
disorder limits his or her functioning, and paragraph C provides criteria used to evaluate "serious
and persistent mental disorders." *Id.* Only some of the eleven diagnostic categories of mental
disorders have paragraph C criteria, and for those categories, the "mental disorder must satisfy the
requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." *Id.* If
the claimant satisfies the diagnostic description in the introductory paragraph and the criteria of
both paragraphs A and B (or A and C, when appropriate) are satisfied, the claimant has a listed
impairment. *Id.* Intellectual disorder (12.05) "has two paragraphs, designated A and B, that apply
only to intellectual disorder." *Id.*

h. Step Four: Residual Functioning Capacity and Past Relevant Work

If the claimant does not have a listed impairment, then at Step Four, the ALJ assesses the claimant's residual functional capacity ("RFC") and ability to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(a)(4)(iv), (e). The ALJ first assesses all the relevant medical and other evidence in the record to determine the claimant's RFC. *Id.* §§ 404.1520(e), 416.920(e). The claimant's RFC gauges the most the claimant can do despite the claimant's limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1). Before making a determination, the SSA is responsible for developing the claimant's complete medical history. *Id.* §§ 404.1545(a)(3), 416.945(a)(3).

In the RFC assessment, the ALJ assesses the claimant's physical and mental abilities, as well as other abilities affected by the claimant's impairments. *Id.* §§ 404.1545(b)–(d), 416.945(b)–(d). With respect to a claimant's physical abilities, "[a] limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and other work." *Id.* §§ 404.1545(b), 416.945(b). With respect to a claimant's mental abilities, "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [the claimant's] ability to do past work and other work." *Id.* §§ 404.1545(c), 416.945(c).

Next, the ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the ALJ determines that the claimant can still perform the past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(f), 416.920(f). "Past relevant work" is work that the claimant has done in the past 15 years, that qualifies as substantial gainful activity, and that has "lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). The ALJ will determine whether the claimant can do her past relevant work by evaluating the claimant's testimony on work performed in the past. *Id.* §§ 404.1560(b)(2), 416.960(b)(2). In addition, the ALJ may evaluate the testimony of other people familiar with the claimant's past work, the opinions of a

8

vocational expert ("VE"), or other resources, such as the Department of Labor's Dictionary of Occupational Titles. *Id.* §§ 404.1560(b)(2), 416.960(b)(2). If the claimant is found not capable of performing past relevant work at Step Four, then the burden of proof shifts to the Commissioner of the SSA to prove that the claimant is not disabled at Step Five. *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

### i. Step Five: Adjustment to Other Work

If the claimant cannot perform past relevant work, then at Step Five the ALJ determines whether the claimant can adjust to other work based on the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, the ALJ uses the RFC assessment from Step Four to determine whether the claimant can adjust to other work. *Id.* §§ 404.1560(c)(1), 416.920(c)(1). If the ALJ determines that "other work exists in significant numbers in the national economy that [the claimant] can do," then the ALJ will find that the claimant is not disabled. *Id.* §§ 404.1560(c)(2), 416.920(c)(2). The ALJ may meet her Step Five burden in two ways: "(1) the testimony of a VE or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *See Osenbrock v. Apfel*, 240 F.3d 1157, 1161 (9th Cir. 2001).

## C. Procedural History

### 1. SSA Decision

On November 12, 2013, Plaintiff applied for SSI pursuant to Title XVI of the Act, claiming physical and mental impairments since March 30, 2008. AR 15, 306. The SSA denied Plaintiff's claim on September 3, 2015, and affirmed its holding upon reconsideration on January 29, 2016. AR 15. At Plaintiff's request, ALJ Arthur Zeidman held an administrative hearing on August 3, 2017. *Id.* Victoria Rei, an impartial Vocational Expert, also appeared and testified by telephone at the hearing. *Id.* On December 1, 2017, the ALJ issued an opinion denying Plaintiff's SSI claim. AR 12–30.

At Step One, the ALJ found Plaintiff had not engaged in any substantial gainful activity since his application date of November 12, 2014. AR 17.

At Step Two, the ALJ found Plaintiff had the following severe impairments: substance

abuse and asthma. AR 17–19. The ALJ found non-severe Plaintiff's alleged impairments of PTSD, insomnia, nightmares, psychotic disorder, paranoia, and depression. AR 17. In doing so, the ALJ gave no weight to the opinions of Ms. Fenton, Dr. Kennedy, and Dr. Schnurr, effectively rejected the opinion of Dr. Franklin, and assigned little weight to the opinion of Dr. Graves-Matthews. AR 18-19. Consequently, the ALJ determined that evidence did not support a finding of more than mild work-related limitations based on Plaintiff's alleged mental impairments. AR 19.

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ "did not find evidence, to the degree necessary, of chronic asthmatic bronchitis or attacks." *Id.*

At Step Four, the ALJ considered opinion evidence, "all symptoms and the extent to which these symptoms reasonably [could] be accepted as consistent." *Id.* Employing this analysis, the ALJ found that Plaintiff had the RFC to "perform a full range of work at all exertional levels," with the limitations that "he must avoid exposure to pulmonary irritants such as dust, odors, and fume. He occasionally could respond appropriately to supervisors, coworkers, and the public. He occasionally could deal with change in the work setting. He is limited to simple work-related decisions." *Id.* The ALJ also found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of his reported symptoms were not entirely consistent with medical evidence and other evidence in the record." *Id.* Specifically, the ALJ noted descriptions in the record of a series of asthma exacerbations which were successfully treated with medication. *Id.* In response to Plaintiff's alleged physical impairments due to a previous gunshot wound, the ALJ pointed to physical evaluations where Dr. McMillan observed a normal gait and normal range of motion. AR 20, 1500.[3]

When addressing Plaintiff's mental impairment allegations, the ALJ found that Dr. Foster-

---

[3] The ALJ did not specifically assign weight to Dr. McMillan's medical opinion, though his heavy reliance on that opinion suggests great weight was assigned it. AR 21.

Valdez's assessment was consistent with evidence at the hearing level, which did not demonstrate that Plaintiff's mental impairments were severe, while noting that her opinion was not one to which evidentiary weight can be assigned because it was not a functional assessment. AR 21. The ALJ also found that the Plaintiff's substance use would likely reduce his ability to function in a work environment, but noted that even when Plaintiff reported substance use, medical examiners described him as having normal speech, appropriate mood and affect, and normal behavior. *Id.* Considering these findings, the ALJ concluded that Plaintiff reasonably might have some limitations in interpersonal interactions, changes, and complex work-related decisions, but that these limitations might resolve if Plaintiff stops abusing substances. *Id.* The ALJ also noted that he would find the Plaintiff "not disabled" regardless of Plaintiff's asthma and substance abuse, such that Plaintiff's substance abuse was not material to a finding of disability. *Id.*

At Step Five, the ALJ found Plaintiff did not have any past relevant work. AR 22. The vocational expert testified that Plaintiff would be able to perform the requirements of representative occupations such as hand packager, laundry laborer, and warehouse worker, and indicated that 713,000 related jobs exist in the national economy. AR 23. Considering the Plaintiff's age (42), education (high school), work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. AR 22–23. Accordingly, the ALJ ruled that Plaintiff was not disabled and therefore did not qualify for SSI. *Id.*

On December 1, 2017, the Appeals Council denied Plaintiff's request for review of the ALJ's second decision, applying the laws, regulations, and rulings in effect at the date of the action. AR 1–4. Thus, the ALJ's decision became the Commissioner's final decision regarding Plaintiff's application. AR 1.

### 2. Judicial Appeal

On June 12, 2018, Plaintiff filed this appeal challenging Defendant's final denial of disability benefits. Plaintiff filed her motion for summary judgment on November 15, 2018. Dkt. No. 20 ("Pl. Mot."). Defendant filed a cross-motion for summary judgment and opposition on January 28, 2019. Dkt. No. 23 ("Def. Mot."). The Court addresses both parties' contentions in

this order.

## II.    STANDARD OF REVIEW

The Court has jurisdiction to review final decisions of the Commissioner.  *See* 42 U.S.C. § 405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").  The Court may disturb the Commissioner's decision to deny benefits only if the decision is either not supported by substantial evidence, or is based on legal error.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 985, 690 (9th Cir. 2009)).  This evidence must be "more than a mere scintilla, but may be less than a preponderance," *id.*, and "where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld," *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Finally, the Court may not reverse an ALJ's decision if the error is harmless.  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Molina*, 674 F.3d at 1111 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)) (alterations in original).

## III.    DISCUSSION

Plaintiff argues that the ALJ made legal errors at multiple steps of his analysis.  First, Plaintiff argues that the ALJ erred by finding Plaintiff's mental impairments non-severe at step two of the disability analysis.  Pl. Mot. at 17.  Specifically, Plaintiff argues that the ALJ erred by (1) failing to properly consider and evaluate the medical evidence; and (2) failing to call a medical expert to testify when he had a duty to do so.  Second, Plaintiff argues that the ALJ erred by rejecting his testimony as not credible.  Finally, Plaintiff argues that the ALJ erred in determining Plaintiff's RFC.  Defendant responds that the ALJ properly evaluated the medical evidence and appropriately determined Plaintiff's mental impairments were non-severe; the ALJ had no duty to

call a medical expert; the ALJ appropriately discounted Plaintiff's reported symptoms; and any Step Two error was harmless because the RFC assessment adequately accommodated Plaintiff's alleged mental symptoms. *See* Def. Mot. 3–22.

Because the Court finds that the ALJ failed to provide specific and legitimate reasons to reject the medical opinions of Dr. Franklin and Dr. Schnurr and failed to address Dr. Watson's opinion, and that these errors infected the ALJ's sequential analysis, the Court remands for further administrative proceedings.

### A.     The ALJ's Step Two Determination Was Inadequate

At step two, as described above, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe. This step "is a de minimis screening device to dispose of groundless claims," and "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Ninth Circuit case law provides that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)).

Plaintiff argues that he has severe mental impairments: PTSD, insomnia, nightmares, psychotic disorder, paranoia, and depression. AR 360. However, the ALJ found at step two that "the evidence . . . do[es] not support a finding that the claimant has a 'severe' medical impairment." AR 19.

### i.     Evaluation of Medical Evidence

Plaintiff argues that the ALJ failed to properly weigh the opinions of Plaintiff's examining providers (Dr. Graves-Matthews, Ms. Fenton, Dr. Franklin, Dr. Kennedy, and Dr. Watson), as well as the state's examining provider (Dr. Schnurr), in reaching his decision. Pl. Mot. at 9–16. Specifically, Plaintiff contends that the ALJ "failed to provide clear and convincing" reasons for assigning little or no weight to "uncontradicted opinions" of providers. Pl. Mot. at 10. The Court finds that the ALJ gave specific and legitimate reasons supported by substantial evidence for

assigning little or no weight to Dr. Graves-Matthews's, Ms. Fenton's, and Dr. Kennedy's opinions. However, the Court finds that the ALJ erred by failing to provide specific and legitimate reasons for rejecting Drs. Franklin's and Schnurr's opinions, and by failing to address (or even acknowledge) Dr. Watson's opinion. The Court also finds that these errors were not harmless.

The ALJ, when determining whether Plaintiff has a medically determinable impairment, will always consider medical opinions and the relevant evidence received. 20 C.F.R. § 404.1527(b). Cases distinguish among "three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is generally given to the treating physician's opinion, but it "is not . . . necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830. An ALJ must "provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician," and "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting an opinion contradicted by another doctor. *Id.* at 830–31.

a. Dr. Franklin's Opinion

In rejecting Dr. Franklin's August 29, 2016 opinion, the ALJ found her conclusions "either uninformed or misleading" because she failed to address how Plaintiff's drug use would affect his functional ability and made no connection between his functional symptoms and drug use. AR 18. The Court finds that this explanation fails to meet either the "clear and convincing" or "specific and legitimate" standard. "The agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review. A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The ALJ's reasoning for effectively assigning no weight to Dr. Franklin's opinion falls short of this mandate.

First, it is unclear how Dr. Franklin's opinion was uninformed when, as the ALJ noted, Dr. Franklin specifically wrote in her opinion that "there was no evidence of [claimant's] substance use on the day of the evaluation," even though claimant had a history of "heavy drug use." AR 18. This is not a case where the expert's unawareness of claimant's drug use inherently undermined the opinion. *See Ridgley v. Berryhill*, 706 F. App'x 365, 365–66 (9th Cir. 2017); *Rick M. v. Comm'r of Soc. Sec.*, No. 2:17-CV-00283-JTR, 2018 WL 4608479, at *4–5 (E.D. Wash. Sept. 25, 2018). Although Defendant cites these cases in support of the ALJ's rejection of Dr. Franklin's opinion, both are inapposite. The claimants in those cases were using substances at the time of the evaluation and/or did not disclose recent drug use to the treating physician, whereas here, Dr. Franklin included express statements acknowledging past use and the lack of present use. AR 1520.

Second, the ALJ failed to provide any explanation of how Plaintiff's past drug use could affect his cognitive function so as to render Dr. Franklin's opinion "misleading." *See Reinhart v. Berryhill*, No. 3:17-CV-05831-DWC, 2018 WL 1790744, at *3 (W.D. Wash. Apr. 16, 2018) (finding that the ALJ erred in his consideration of a medical opinion in part because "the ALJ failed to explain how the marijuana use affected [claimant's] functioning such that it countered [the doctor's] findings."). The Court believes that a plausible explanation for the lack of any further analysis of Plaintiff's past drug use could be simply that Dr. Franklin found no connection between Plaintiff's functional symptoms and his drug use. No other medical opinion makes such a connection so as to make Dr. Franklin's failure to opine further "misleading." The ALJ must offer more than a conclusion: he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

The Court is limited to the agency's reasoning and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (quoting *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)). Without a clear and specific explanation of why the absence of further analysis of the effects of Plaintiff's past drug use on his functional ability rendered Dr. Franklin's opinion "uninformed and misleading," the Court is unable to meaningfully review the ALJ's conclusion.

Defendants argue the ALJ appropriately rejected Dr. Franklin's diagnosis since it is meaningfully contradicted by Dr. Foster-Valdez. Def. Mot. at 19. The Court disagrees. Dr. Foster-Valdez did not evaluate Plaintiff. Instead, she repeatedly noted that there was insufficient evidence to make conclusive findings since Plaintiff was incarcerated, and found that Plaintiff had an impairment of an "Affective Disorder." AR 197, 199, 200. Perhaps most importantly, however, the Defendant's "contention invites [the] Court to affirm the denial of benefits on a ground not invoked by the [ALJ] in denying the benefits originally," and the Court "must decline." *Pinto*, 249 F.3d at 847–48. The ALJ never indicated that Dr. Foster-Valdez's opinion contradicted Dr. Franklin's opinion. Instead, he noted that Dr. Foster-Valdez's opinion "is not an opinion to which evidentiary weight can be assigned." AR 21. Thus, the Court may not affirm upon this ground.

### b. Dr. Schnurr's Opinion

The ALJ also erred by rejecting Dr. Schnurr's opinion on the ground that she was "the only evaluator in the record who concluded there were cognitive deficits; no examining or treating sources mentioned difficulties with memory, comprehension, communications, insight, judgment, or thinking." AR 19. As mentioned above, Dr. Franklin directly found that Plaintiff had memory and cognitive difficulties. AR 19, 1519, 1065, 1735. Further, Dr. Fenton noted that Plaintiff was easily confused and had poor concentration, AR 1746–47, and Dr. Kennedy noted that Plaintiff's ability to understand and remember very short and simple instructions and "work-like procedures" was moderately limited, AR 1545. Because the ALJ's proffered reason for assigning no weight to Dr. Schnurr's opinion misstates the record, it did not constitute specific, legitimate reasons supported by the record. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusions.")

### c. Dr. Watson's Opinion

The ALJ also erred in failing to address Dr. Watson's opinion, in which Dr. Watson found that Plaintiff could stand or walk less than two hours and sit less than six hours in an eight-hour workday, and noted several medical conditions that would prevent Plaintiff from working ("Post

Traumatic Stress Disorder and Psychiatric [sic]").  *See* AR 1543–44; *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion . . ., he errs.").  Even if there may be legitimate reasons for rejecting Dr. Watson's opinion, the Court may only "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ— not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).  Thus, by failing to mention Dr. Watson's opinion, the ALJ erred.

The Court finds that the cumulative errors—failure to provide specific and legitimate reasons to reject Dr. Franklin's and Dr. Schnurr's opinions and failure to address Dr. Watson's opinion—were not harmless, as they infected all of the ALJ's determinations throughout the sequential analysis.  Contrary to Defendant's argument that any error was cured by the fact that "the ALJ conducted the remaining steps of the sequential evaluation and assessed an RFC with non-exertional limitations," the ALJ did not adequately assess Plaintiff's alleged mental impairments in the RFC.  Def. Mot. at 15.  The ALJ's reasoning makes clear that after rejecting Dr. Franklin's and Dr. Schnurr's opinions, the resulting lack of evidence supporting Plaintiff's claim of severe mental impairment strongly affected his conclusion.  *See* AR 19 ("no examining or treating source mentioned difficulties with memory, comprehension, communications, insight, judgment, or thinking."); AR 21 ("the evidence submitted at the hearing level . . . does not demonstrate that the claimant's mental impairments are severe.").  Although the ALJ may still reject these opinions on remand, if he provides specific and legitimate reasons supported by substantial evidence, if they are credited, they could affect the remaining analysis.  Additionally, if Dr. Watson's opinion were fully credited, the Court cannot say with certainty that the ALJ would still have reached the same result.  *Cf. Stout*, 454 F.3d at 1056 ("[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").  Accordingly, the ALJ's cumulative errors were not harmless.

d.  Dr. Graves-Matthews's Opinion

17

The ALJ gave little weight to Dr. Graves-Matthews's opinion finding that Plaintiff's "rapid[] improve[ment] with medications" indicated that Dr. Graves-Matthews's initial assessment—where she assigned Plaintiff a GAF score of 50—was "influenced by factors other than the actual symptoms." AR 18. Despite Plaintiff's urging, GAF scores "do[] not have a direct correlation to the severity requirements in [Social Security] mental disorder listing," 65 Fed. Reg. 50746-01, 50765 (Aug. 21, 2000), but are instead "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment," *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). "[W]hile an ALJ may consider a GAF score in considering a claimant's abilities, an ALJ does not need to accept or reject a GAF score." *Boudreau v. Comm'r of Soc. Sec.*, 1:15-cv-00088-LJO-SAB, 2018 WL 3493779, at *12–13 (E.D. Cal. July 20, 2018) (finding that "the ALJ did not err in not specifically addressing, and providing reasons for rejecting the GAF score of 50."). Furthermore, because Dr. Graves-Matthews did not identify any specific limitations, and Plaintiff's symptoms improved with medication, substantial evidence supported the ALJ's decision to assign little weight to Dr. Graves-Matthews's assessment. *Cf. Dorrell v. Colvin*, 670 F. App'x 480, 480–81 (9th Cir. 2016) (upholding the ALJ's finding that claimant's "long history of depression" was non-severe because her depression was "responsive to medication").

e. Ms. Fenton's and Dr. Kennedy's Opinions

The ALJ assigned no weight to Alexa Fenton's opinion because she provided "little support for her conclusions." AR 18. The record reflects that her assessment consisted primarily of standardized, check-the-box responses, AR 1748–52, which the ALJ permissibly rejected. *See Molina*, 674 F.3d at 1111–12 (ALJ properly rejected an opinion that "consisted primarily of a standardized, check-the-box form in which she failed to provide supporting reasoning or clinical findings"). Though Ms. Fenton made some observations regarding Plaintiff's behavior, the ALJ acknowledged these observations while still noting they provide insufficient support for a GAF score of 47. AR 18. Similarly, the ALJ appropriately assigned no weight to Dr. Kennedy's opinion given that "there are no notes from examinations, treatments, therapy, or counseling . . . to corroborate his findings." *Id.*

### ii. Duty to Call a Medical Expert

"An ALJ is not required to order every medical evaluation that could conceivably shed light on a claimant's condition, but rather just those that would resolve ambiguities or inadequacies in the record." *Lloyd v. Astrue*, No. C-11-4902-EMC, 2013 WL 503389, at \*5 (N.D. Cal. Feb. 8, 2013) (citing *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)). Plaintiff's disagreement with the ALJ's conclusions does not make the record ambiguous or inadequate. *See Leitner v. Comm'r Soc. Sec.*, 361 F. App'x 876, 877 (9th Cir. 2010) (the "claimant bears the burden" of establishing that symptoms interfere with his or her ability to "perform basic work activities," and the ALJ, on that record, could make such a determination) (citations omitted). Here, there is little evidence that the record was ambiguous or inadequate—the ALJ evaluated medical reports from five of Plaintiff's providers and considered reports from a vocational expert and four state agency consultants, as well as Plaintiff's medical treatment history. *See* AR 17–23. And notably, the ALJ did order consultative examinations, at least one of which Plaintiff failed to attend. AR 21, 199. Plaintiff's argument that the ALJ improperly substituted his own medical judgment is misplaced: an ALJ is specifically tasked with making "findings about what the evidence shows." 20 C.F.R. § 416.920b. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

Plaintiff further argues that the Commissioner of Social Security's Hearings, Appeals, and Litigation Manual ("HALLEX") imposes a duty on the ALJ to obtain medical expert testimony where there is a "question about the accuracy of the medical test results reported." Pl. Mot. at 16; HALLEX I-2-5-34(A)(1). Plaintiff argues that the ALJ thus erred in declining to obtain medical testimony for Plaintiff's hearing, particularly because the ALJ rejected Dr. Schnurr's test results. *See* Pl. Mot. at 17. Yet, as the Defendant notes, "HALLEX does not impose judicially enforceable duties on either the ALJ or this court." *Lockwood v. Comm'r Social Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010). Thus, the ALJ did not have a duty to obtain medical expert testimony.

### B. The ALJ's Credibility Analysis

Plaintiff argues that the ALJ erred in finding Plaintiff's statements about the intensity,

persistence, and limiting effects of the symptoms "not entirely consistent with the medical evidence." Pl. Mot. at 20.

Absent affirmative evidence or an explicit finding of malingering, the ALJ may reject a Plaintiff's testimony only with specific, clear, and convincing reasons. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011). Simultaneously, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). In evaluating the claimant's credibility, the ALJ relies on "ordinary techniques of credibility evaluation," such as (1) "inconsistencies either in the testimony or between the testimony and the claimant's conduct," (2) variations between the claimant's daily activities and his symptoms, and (3) the medical record including observations of the claimant's symptoms. *Id.* (citation and quotations omitted); *see Thomas*, 278 F.3d at 958–59.

The Court finds that the ALJ articulated clear and convincing reasons to conclude that Plaintiff's testimony was not entirely consistent with the evidence pertaining to Plaintiff's asthma impairment. The ALJ noted that records indicated that Plaintiff's asthma improved with treatment, even while Plaintiff smoked, used heroin, and failed to take medications consistently. *See* AR 20–21; *see, e.g.*, AR 1396–98 (Plaintiff's condition resolved with treatment); AR 1716–20 (when plaintiff presented with shortness of breath and cough, provider noted he was not using his inhaler, and Plaintiff felt "much better" after nebulizer treatment). Because Plaintiff's asthma symptoms were generally controlled when he took medication, the ALJ reasonably found that Plaintiff's asthma was not disabling. *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Further, the ALJ noted that providers documented largely normal physical functioning. *See* AR 20–21; *see, e.g.*, AR 971 (normal physical examination and "no objective findings to correlate with subjective complaint[s]"); AR 1384–85 (e.g., normal range motion and normal gait). Dr. Scott concluded that Plaintiff required environmental precautions for asthma but did not have any exertional, postural, manipulative, visual, or communicative limitations. AR 21, 201. Similarly, Dr. Schnurr reported that Plaintiff

was able to ride a bicycle to his examination, go to Subway for food, and perform personal care activities independently. AR 18, 22, 1676–78; *see also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (finding the claimant's functional restrictions and daily activities were relevant considerations for determining credibility of the claimant's alleged symptoms).

With respect to Plaintiff's alleged mental limitations, the ALJ similarly concluded that evidence did not support Plaintiff's allegations, yet provided no further explanation. The ALJ did note that Plaintiff was "able to interact successfully with treatment providers" and was able to "comprehend and follow medical directions and testing" procedures. But this does not establish clear and convincing reasons in light of the medical opinions noting severe mental impairments and stating that Plaintiff "had difficulty remembering and following instructions." AR 1517; *see also* AR 22, 1679–80. Since the ALJ based his judgment that Plaintiff's statements were not reliable in large part on the rejection of medical opinions supporting a mental impairment, reevaluation of these opinions could affect the ALJ's conclusions regarding Plaintiff's credibility. *See* AR 22. The Court finds that any evidence that may shed further light on the reliability of Plaintiff's testimony must be considered (or rejected on sufficiently articulated grounds) in order to properly evaluate all of the evidence presented.

### C. Because The ALJ Inadequately Assessed The Evidence At Step Two, The ALJ's Findings At Step Four And Step Five Are Erroneous

As described above, the ALJ's assessment of Plaintiff's impairments at steps two and three affect the remaining analysis. Given the above-noted errors, the ALJ's assessment of Plaintiff's RFC was inadequate.

### D. Remand Is Necessary

The Court has discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). However, where there are outstanding issues that must be resolved before a final determination can be made, and it is not clear from the record that Plaintiff is disabled, remand is appropriate. *See id* at 593–

96.

Here, as described above, there are outstanding issues that must be resolved before a final disability determination can be made. For purposes of clarity, the Court sets forth the scope of the remand proceedings as follows: (1) the ALJ shall reevaluate Dr. Franklin's and Dr. Schnurr's opinions and apply the relevant legal standard to determine whether the opinion should be discounted, further developing the evidentiary record where necessary; (2) the ALJ shall evaluate and address Dr. Watson's opinion in the first instance; (3) the ALJ shall reassess Plaintiff's credibility and Plaintiff's RFC as to mental impairments in light of Dr. Franklin's, Dr. Schnurr's, and Dr. Watson's opinions if there is no adequate basis for rejecting them; and (4) the ALJ shall revisit his analysis at steps four and five based on the assessments above. Irrespective of the ultimate merits of Plaintiff's application for disability benefits—on which this Court expresses no opinion—the ALJ must properly consider and weigh such evidence. The Court finds that the ALJ's failure to do so "resulted in a less than complete examination of the longitudinal nature of Plaintiff's mental impairments and affected the" entire five-step sequential analysis. *Kimmins v. Colvin*, No. 12-cv-04206-YGR, 2013 WL 5513179, at *10 (N.D. Cal. Oct. 4, 2013).

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment. The action is **REMANDED** for further administrative proceedings consistent with this opinion. The clerk is directed to close this case.

**IT IS SO ORDERED.**

Dated: 9/30/2019

_Haywood S. Gilliam Jr._
HAYWOOD S. GILLIAM, JR.
United States District Judge